UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:16-cv-295-FDW-DCK

| | |
|---|---|
| CRYSTAL ESCHERT, ) </br> ) </br> Plaintiff, ) </br> ) </br> vs. ) </br> ) </br> CITY OF CHARLOTTE, ) </br> ) </br> Defendant. ) </br> ) | ORDER |

THIS MATTER is before the Court on Defendant, City of Charlotte's Motion for Judgment as a Matter of Law (Doc. No. 89) and supporting memorandum (Doc. No. 90). Plaintiff filed a memorandum in opposition (Doc. No. 91), and the matter is ripe for review. The Court finds that a hearing is not necessary to resolve the issues and, for the reasons that follow, DENIES Defendant's Motion.

## I. BACKGROUND

In the interests of judicial economy, the Court declines to provide a thorough recitation of the testimony, evidence, and arguments presented at the six-day trial before a jury in this matter. In sum, the causes of action centered on Defendant's termination of Plaintiff, a fire investigator for the Charlotte Fire Department ("CFD"). Defendant contended that it terminated Plaintiff because she violated its social media policy by posting two racially inflammatory comments on Facebook ("Facebook Posts"). Plaintiff, on the other hand, claimed that Defendant actually fired her because she complained to her father-in-law and City Councilwoman Claire Fallon about health and safety issues in a new CFD building and about Defendant's mismanagement of money related to that building ("Building Complaints").

1

Relevant here, Plaintiff brought two causes of action against Defendant alleging that Defendant retaliated against her for exercising her First Amendment right to free speech ("First Amendment Retaliation"): one claim was based on her Facebook Posts, and the other claim was based on her Building Complaints.[1]  At the close of all evidence, Defendant moved for judgment as a matter of law.  The Court granted Defendant's motion concerning her claim for First Amendment Retaliation based on the *Facebook Posts*.  The Court ruled that the Facebook Posts were not protected by the First Amendment because Plaintiff failed to establish that her interest in that speech outweighed Defendant's interest in providing effective and efficient services to the public.  (Doc. No. 91-1, pp. 28-31).  The Court deferred ruling on Plaintiff's claim for First Amendment Retaliation based on the *Building Complaints* and submitted that and other remaining issues to the jury.

With regard to Plaintiff's claim for First Amendment Retaliation based on the Building Complaints, the Court asked the jury five questions, including two special interrogatories to assist the Court in determining whether the Building Complaints constituted protected speech.  The jury returned a verdict in favor of Plaintiff, finding that (a) Plaintiff's Building Complaints were a motivating factor in Defendant's decision to terminate her employment, (b) Defendant would *not* have terminated Plaintiff's employment in the absence of the Building Complaints, and (c) Plaintiff was entitled to $309,692 on that claim.  (Doc. No. 86).  The jury further found that (d) it

---

[1] Plaintiff also brought two identical causes of action under the North Carolina Constitution.  The parties agreed both at summary judgment and at trial that the law for a First Amendment Retaliation claim also applies to a free speech claim under the State Constitution.  Accordingly, for purposes of this Order, the Court's reference to Plaintiff's First Amendment Retaliation claims incorporates her State Constitution claims as well.

Also, in addition to her free speech claims, Plaintiff alleged causes of action for gender discrimination and retaliation in violation of state and federal laws.  After Plaintiff rested her case-in-chief, the Court granted Defendant's Rule 50(a) motion for judgment as a matter of law on Plaintiff's Title VII retaliation claim.

was reasonable to believe that Plaintiff's Building Complaints caused, or could have caused, disharmony or disruption in the workplace, (e) but it was not reasonable to believe they impaired her ability to perform her duties. (Doc. No. 86).[2]

Defendant renewed its motion for judgment as a matter of law, arguing that the Court should rule that the Building Complaints were not protected by the First Amendment, a question of law that the Court must answer before judgment can be entered in this case. The Court ordered the parties to brief the matter. Discussion of other background information and evidence is set forth more fully below as needed to explain the Court's decision.

## II. STANDARD OF REVIEW

A party that moved for judgment as a matter of law under Fed. R. Civ. P. 50(a) before the case is submitted to the jury may renew its motion after trial under Fed. R. Civ. P. 50(b). A Rule 50(b) motion is properly granted "if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof." Wheatley v. Wicomico Cnty., Md., 390 F.3d 328, 332 (4th Cir. 2004) (quoting Singer v. Dungan, 45 F.3d 823, 827 (4th Cir. 1995)). The Court views the evidence in the light most favorable to the nonmoving party. Dennis v. Columbia Colleton Med. Ctr., 290 F.3d 639, 645 (4th Cir. 2002).

## III. ANALYSIS

The legal principles governing First Amendment claims by public employees are well-settled. "A state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." Connick v. Myers, 461 U.S. 138,

---

[2] The jury also returned a verdict in favor of Plaintiff on her two State wrongful discharge claims in violation of the North Carolina Retaliatory Employment Discrimination Act and North Carolina public policy and awarded her $464,538 for each of those claims. (Doc. No. 86). It did not find Defendant liable for gender discrimination.

142 (1983). Courts must "seek 'a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" Connick v. Myers, 461 U.S. 138, 142 (1983) (quoting Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968)); Grutzmacher v. Howard Cnty., 851 F.3d 332, 341 (4th Cir. 2017) ("Protection of the public interest in having debate on matters of public importance is at the heart of the First Amendment." (quoting McVey v. Stacy, 157 F.3d 271, 277 (4th Cir. 1998))). In that vein, public employees do not surrender their First Amendment right to speak on matters of public concern simply because they are employed by the government. Grutzmacher, 851 F.3d at 341. To the contrary, because "government employees are often in the best position to know what ails the agencies for which they work," the Supreme Court "has repeatedly underscored the considerable value of encouraging, rather than inhibiting, speech by public employees." Id. (quoting Hunter v. Town of Mocksville, 789 F.3d 389, 396 (4th Cir. 2015) (internal quotation marks omitted); but see Connick, 461 U.S. at 138 ("[T]he First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs").

With these principles in mind, the Fourth Circuit recently reaffirmed that to state a claim for First Amendment retaliation, a plaintiff must satisfy the three-prong test set forth in McVey by showing that: (1) she was a "public employee . . . speaking as a citizen upon a matter of public concern;" (2) her "interest in speaking upon the matter of public concern outweighed the government's interest in providing effective and efficient services to the public;" and (3) her "speech was a substantial factor in the employer's termination decision." Grutzmacher, 851 F.3d at 342 (quoting McVey, 157 F.3d at 277-78)). The first two prongs, which determine whether the

4

speech is protected by the First Amendment, are questions of law for the Court, while the third prong is a question of fact for a jury. Lane v. Anderson, 660 F. App'x 185, 191 (4th Cir. 2016).

**A.**

The first question of law is whether Plaintiff, a public employee, spoke as a private citizen upon a matter of public concern. The Fourth Circuit has instructed that:

> [i]n determining whether speech addresses matters of public concern, "we examine the content, context, and form of the speech at issue in light of the entire record." Urofsky v. Gilmore, 216 F.3d 401, 406 (4th Cir. 2000) (en banc). "Speech involves a matter of public concern when it involves an issue of social, political, or other interest to a community." Id. This "public-concern inquiry centers on whether 'the public or the community is likely to be truly concerned with or interested in the particular expression.' " Kirby v. City of Elizabeth City, 388 F.3d 440, 446 (4th Cir. 2004) (quoting Arvinger v. Mayor of Baltimore, 862 F.2d 75, 79 (4th Cir. 1988)).

Grutzmacher, 851 F.3d at 343. "[M]atters relating to public safety are quintessential matters of 'public concern,'" Goldstein v. Chestnut Ridge Volunteer Fire Co., 218 F.3d 337, 353 (4th Cir. 2000), whereas "personal grievances [and] complaints about conditions of employment" are not, Campbell v. Galloway, 483 F.3d 258, 267 (4th Cir. 2007) (quoting Stroman v. Colleton Cnty. Sch. Dist., 981 F.2d 152, 156 (4th Cir. 1992)).

In addition, a public employee speaks as a private citizen when she "make[s] public statements outside the course of performing [her] official duties," as opposed to "speak[ing] pursuant to employment responsibilities." Garcetti v. Ceballos, 547 U.S. 410, 423-24 (2006) (concluding that "the First Amendment does not prohibit managerial discipline based on an employee's expressions made pursuant to official responsibilities").

Here, Plaintiff's Building Complaints addressed matters of public concern. Plaintiff sent two separate e-mails containing her Building Complaints to City Councilwoman Claire Fallon, an

5

elected public official. The e-mails included Plaintiff's allegations that CFD was mismanaging public funds related to a new CFD building and that the new building was not safe. (Doc. No. 91-3). For example, Plaintiff wrote that "Our $1.9 million for our building has fluctuated and at one time we only had a few hundred thousand to work with! No one could figure out where alllllllll that money went." (Doc. No. 91-3). In a more detailed list, Plaintiff expressed concern that the building was not ADA compliant, would not pass building or electrical inspections, and had "questionable" air quality. (Doc. No. 91-3). Considering Plaintiff and City Councilwoman Fallon testified that members of the public could visit the new building for tours and meetings (Doc. No. 90, Ex. B, p. 18, ll. 2-5; Doc. No. 90-4, p. 13, ll. 2-13), it is reasonable to infer that Plaintiff was concerned not just for her own conditions of employment, but for the safety of any person who could enter the space, including members of the public.

It is commonsensical that members of the community would be truly concerned with Plaintiff's allegations that the City of Charlotte was mismanaging taxpayer dollars and that a new fire department building was unsafe for both fire department employees and members of the public. Whether Plaintiff's allegations were actually true is irrelevant. <u>Liverman v. City of Petersburg</u>, 844 F.3d 400, 410 (4th Cir. 2016) ("Whether plaintiffs were correct or not in their views is not the issue."). The Building Complaints went beyond personal grievances and complaints about conditions of employment and addressed matters of public concern.

Moreover, Plaintiff spoke as a private citizen when making these Building Complaints. Plaintiff testified that her job as a fire investigator was to investigate the cause of fires and write reports of her findings. (Doc. No. 91-4, p. 8, ll. 14-21). She also assisted fire educators with their fire education program. (Doc. No. 91-4, p. 8, ll. 23-24). Her Building Complaints, which she sent

6

to an elected public official with no employment authority over her, were outside the course of her official duties and employment responsibilities. Accordingly, because Plaintiff established as a matter of law that she was speaking as a private citizen on a matter of public concern, she satisfied the first prong of the McVey test.

**B.**

Under the McVey test's second prong, commonly referred to as the Connick/Pickering balancing test, the Court must determine whether Plaintiff's interest in speaking upon those matters outweighed Defendant's interest in providing effective and efficient services to the public. The Court "must 'consider the context in which the speech was made, including the employee's role and the extent to which the speech impair[ed] the efficiency of the workplace.'" Grutzmacher, 851 F.3d at 345 (quoting Smith v. Gilchrist, 749 F.3d 302, 309 (4th Cir. 2014).

> Factors relevant to this inquiry include whether a public employee's speech (1) impaired the maintenance of discipline by supervisors; (2) impaired harmony among coworkers; (3) damaged close personal relationships; (4) impeded the performance of the public employee's duties; (5) interfered with the operation of the institution; (6) undermined the mission of the institution; (7) was communicated to the public or to coworkers in private; (8) conflicted with the responsibilities of the employee within the institution; and (9) abused the authority and public accountability that the employee's role entailed.

Id. (quoting Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 317 (4th Cir. 2006)). "[A] government employer need not prove that the employee's speech actually disrupted efficiency, but only that an adverse effect was reasonably to be apprehended." Id. (quotation marks and citations omitted).

Defendant argues as a general matter that its interest in the promotion of camaraderie and efficiency as well as internal harmony and trust outweighs the public interest in Plaintiff's speech.

Defendant contends that the jury determined that "the balancing test tipped in [Defendant's] favor" by finding it was reasonable to believe the Building Complaints caused, or could have caused, disharmony or disruption. (Doc. No. 90, p. 10). That argument is not only legally incorrect, in that the Court, not the jury, balances the competing interests, but it is also factually incorrect, as Defendant entirely ignores the jury's additional finding that the Building Complaints did not impair Plaintiff's ability to perform her duties, a factor that weighs in Plaintiff's favor.

In balancing the parties' interests here, the Court acknowledges that "fire companies have a strong interest in the promotion of camaraderie and efficiency." Goldstein, 218 F.3d at 355. That strong interest, however, even when accorded "substantial weight," does not necessarily outweigh a public employee's interest in the speech. Id. at 356. While this Court accords substantial weight to CFD's interest in promoting camaraderie and efficiency, Defendant fails to point to any specific evidence of actual or potential disruption or disharmony caused by Plaintiff's speech. Perhaps that is because it insisted throughout the trial that it was unconcerned with the Building Complaints and that those in Plaintiff's chain of command were unaware Plaintiff made the complaints.

On the other hand, the speech at issue here involved specific allegations of a government's mismanagement of public funds as well as issues of health and safety concerns in a building used by public employees and visited by members of the public. Even if Plaintiff's allegations were ultimately untrue, they involved matters of the utmost public concern. When a member of the public has knowledge that a public building is unsafe or that a government is wasting taxpayer money, "that person should not be discouraged from so reporting." Id. at 354. Thus, even though the jury found that the Building Complaints caused, or could have caused, disruption or

disharmony in the workplace, Plaintiff's interest in the speech outweighed Defendant's generalized interest in promoting effective and efficient services to the public. Id. at 356 ("[Generalized and unsubstantiated allegations of 'disruptions', and predictions thereof, must yield to the specific allegations made by [the plaintiff] here, which related specifically to the safety of the public."). Accordingly, because Plaintiff satisfied the first and second prongs of the McVey test, the Court concludes that her speech was protected by the First Amendment as a matter of law.

## C.

Once a plaintiff establishes that her speech is protected, she must show by a preponderance of the evidence that the protected speech was a substantial factor in the defendant's decision to discharge her. This is a question of fact, and an employer may rebut the showing by establishing that "it would have discharged the plaintiff 'even in the absence of the protected [speech].'" Stroman, 981 F.2d at 156 (quoting Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). Here, the jury specifically found that (1) Plaintiff's Building Complaints were a motivating factor in Defendant's decision to terminate her employment and (2) Defendant would *not* have terminated Plaintiff's employment in the absence of the Building Complaints. (Doc. No. 86). That ends the inquiry.

Defendant nevertheless contends that in dismissing Plaintiff's claim for First Amendment Retaliation based on the *Facebook Posts*, the Court effectively ruled that Defendant would have fired Plaintiff absent the Building Complaints and that, therefore, the jury's verdict is inconsistent with the Court's prior ruling. (Doc. No. 90, pp. 5-6). First, this issue is not properly before the Court at this time, as the Court only ordered briefing on the first two prongs of McVey. Regardless, Defendant wholly misconstrues the Court's ruling on the Facebook Posts claim. In dismissing that

claim at the close of all evidence, the Court first ruled as a matter of law that Plaintiff's Facebook Posts involved a matter of public concern. (Doc. No. 91-1, p. 28, ll. 17-18). The Court then stated: "Second, as to the balancing tests, *even if* the [Facebook Posts] were a motivating factor in defendant's decision to terminate plaintiff . . . , the Court concludes as a matter of law that the plaintiff has not established that [Defendant's] interest . . . outweighed the plaintiff's interest . . . ." (Doc. No. 91-1, pp. 28-29, ll. 19-25, 1-2). At no point did the Court decide whether the Facebook Posts were a motiving factor in the decision to terminate Plaintiff, nor was the Court required to do so. See Grutzmacher, 851 F.3d at 348 (declining to reach the third prong of the McVey test after concluding the plaintiff's speech was not protected). Accordingly, the Court rejects Defendant's argument and concludes that, based on the jury's verdict, Plaintiff satisfied the third prong of the McVey test.[3]

## IV. CONCLUSION

For the reasons explained above, the Court concludes as a matter of law that Plaintiff's Building Complaints constituted protected speech under the First Amendment.

IT IS, THEREFORE, ORDERED that Defendant, City of Charlotte's Motion for Judgment as a Matter of Law (Doc. No. 89) is DENIED.

---

[3] Defendant also appears to argue that the evidence does not support the jury's finding that Defendant would not have terminated Plaintiff absent her Building Complaints; however, that argument is more appropriate in a post-judgment motion.

The Clerk of Court is respectfully directed to enter judgment in this case consistent with the jury's verdict.

IT IS SO ORDERED.

Signed: June 2, 2017

Frank D. Whitney
Chief United States District Judge