IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:16-cv-00295

| | |
|---|---|
| CRYSTAL ESCHERT,<br><br>                   Plaintiff,<br><br>v.<br><br>CITY OF CHARLOTTE,<br><br>                  Defendant. | **PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TREBLE DAMAGES UNDER THE NORTH CAROLINA RETALIATORY EMPLOYMENT DISCRIMINATION ACT** |

Crystal Eschert ("Plaintiff"), pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, respectfully submits this Memorandum in Support of Plaintiff's Motion for Treble Damages on the jury's verdict on Plaintiff's claim for retaliatory discharge under the North Carolina Retaliatory Employment Discrimination Act ("REDA"), N.C. Gen. Stat. § 95-240, *et seq.*, Count IV of the Amended Complaint (Doc. 24)/Question Three of the Verdict Form.

## SUMMARY

On May 11, 2017, after six days of trial and a full day of deliberation, a unanimous jury found that: (1) Defendant City of Charlotte's ("Defendant") termination of Plaintiff's employment was motivated by Plaintiff's complaints of health and safety concerns related to 1517 North Graham Street building; (2) Defendant's termination of Plaintiff was in retaliation for her complaints about the building; and (3) Defendant would not have terminated Plaintiff's employment absent her report of her concerns. The jury's factual finding of unlawful termination in violation of REDA, N.C. Gen. Stat. § 95-240, *et seq.*, is a finding of a willful violation on the facts of this case. As a result, Plaintiff is entitled to treble damages on the amount the jury allocated

1

to Count IV/Question Three on the Verdict Form—Plaintiff's successful REDA claim in the amount of $464,538.00.

## ARGUMENT

### I.    REDA Trebling Applies to Defendant

REDA, including its provision for trebling of compensatory damages under § 95-243, specifically applies to cities, including Defendant City of Charlotte, and other governmental entities.  N.C. Gen. Stat. § 95-240, *et seq.*  REDA authorizes awards of pecuniary and non-pecuniary relief:

> (1) An injunction to enjoin continued violation of this Article; (2) Reinstatement of the employee to the same position held before the retaliatory action or discrimination or to an equivalent position; (3) Reinstatement of full fringe benefits and seniority rights; (4) <u>Compensation for lost wages, lost benefits, and other economic losses that were proximately caused by the retaliatory action or discrimination</u>.

N.C. Gen. Stat. § 95-243(c).

### II.    Defendant Willfully Retaliated Against Plaintiff

Plaintiff prevailed on her claim that Defendant violated REDA by showing that: (1) she exercised her right to engage in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists. <u>Webb. v. K.R. Drenth Trucking, Inc.</u>, 780 F. Supp.2d 409, 413 (W.D.N.C. 2011); N.C. Gen. Stat. § 95-241.  The jury decided the factual dispute and concluded that Defendant unlawfully retaliated against Plaintiff for complaining about the 1517 North Graham Street building, and that Defendant would not have made the same decision absent her participation in that protected activity.

Here, the legal conclusion of willfulness follows inexorably from the jury's factual findings.  <u>See, e.g.,</u> <u>Teva Pharm. USA, Inc. v. Sandoz, Inc.</u>, 135 S. Ct. 831, 841-42 (2015) ("[I]n some instances, a factual finding may be close to dispositive of the ultimate legal question.").

2

Plaintiff presented evidence that she complained about health and safety issues at 1517 North Graham Street first to her father-in-law, Ray Eschert, who involved the City's senior budget and finance official, Randy Harrington, who promptly called Fire Chief Jon Hannan to advise him of the concerns Ray Eschert had shared with him. Ray Eschert then emailed Randy Harrington that he was not going to pursue it out of concern for the job security of his daughter-in-law and her supervisors. Mr. Harrington responded that he thought that was wise. A few months later, Chief Hannan learned that Councilwoman Claire Fallon was involved, raising the same issues about the building, and requesting a tour. Former Mayor Dan Clodfelter testified that he had to intervene to get the tour scheduled. Fire Chief Hannan, Deputy Chief Granger, and former City Manager Ron Carlee took part in Councilwoman Fallon's tour of the building. Approximately a week after the tour, Plaintiff got called to the office but was not disciplined. Councilwoman Fallon immediately identified Plaintiff to City Manager Carlee and City Attorney Hagemann as the whistleblower behind her tour of the building. After that, both Deputy Chief Granger and Fire Chief Hannan each attended one of two meetings with Human Resources and Deputy City Attorney at which disciplinary action against Plaintiff was discussed. Deputy Chief Key testified that Fire Chief Hannan recommended Plaintiff's termination in the first of those two meetings and Deputy HR Director Sheila Simpson testified that Deputy Chief Granger recommended Plaintiff's termination in the second meeting. Both Deputy Chief Granger and Fire Chief Hannan testified that neither recommended Plaintiff's termination and neither was involved in her termination. The jury did not buy it.

Rarely is there a case where the whistleblower is identified as the whistleblower using that very word, prior to the decision to terminate their employment. Of course, the decision was willful

– based on the evidence presented in this case which was credible to the jury, there can be no legal conclusion other than a conclusion of willfulness.

The definition of "willfulness" that should be applied here is whether Defendant "knew or showed reckless disregard for the matter of whether its conduct was prohibited by [the] statute." Morris v. Scenera Research, LLC, 368 N.C. 857, 866, 788 S.E.2d, 154, 161 (emphasis added) (citing Morris v. Scenera Research, LLC, 229 N.C. App. 31, 51, 747 S.E.2d 362, 374 (2013), aff'd in part, rev'd in part, 368 N.C. 857, 788 S.E.2d 154 (2016) (quoting McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115, 123 (1988)). "On the issue of treble damages, the relevant question is whether [the employer] acted in conscious disregard and intentional disregard of or indifference to [the employee's] rights when terminating [her] employment." Judgment at ¶37 of Morris v. Scenera Research, LLC, No. 09-cvs-19678, 2012 WL 1720672 (N.C. Super. Ct. May 14, 2012).

The North Carolina Supreme Court adopted the definition of willfulness used under the Fair Labor Standards Act ("FLSA") as the standard for examining REDA claims. Morris, 368 N.C. at 866, 788 S.E.2d. at 161. For example, "[A]n employer's conduct is considered to be in reckless disregard of the FLSA if the employer should have inquired further into whether its conduct was in compliance with the FLSA and failed to make such inquiry." De Luna-Guerrero v. N.C. Grower's Ass'n., Inc., 370 F.Supp.2d 386, 389-90 (E.D.N.C. 2005) (citing 29 C.F.R. § 578.3(c)(3) (2016)).

Here, Defendant was put on notice that Plaintiff was the person who complained about the 1517 North Graham Street building well in advance of terminating her. Furthermore, Defendant knew at least as early as August 27, 2014 that Plaintiff was a whistleblower when Councilwoman Claire Fallon communicated that fact to its City Manager Ron Carlee and City Attorney Robert

4

Hagemann, and which fact Fire Chief Jon Hannan quickly informed – when former City Manager Ron Carlee told him to hold up on any action against Plaintiff and to involve HR and Legal.

The jury was instructed that "An act or omission is 'knowingly' done, if the act is done voluntarily and intentionally, and not because of mistake or accident or other innocent reasons." (**Exhibit A**, p. 7). Actual knowledge is <u>not</u> required to show willfulness under REDA; however, the jury found that Defendant <u>did</u> know about Plaintiff's protected activity by answering "YES" to Questions Three and Four after concluding that this was a "substantial" and "motivating" factor in Defendant's decision to terminate her and that Defendant "would not have terminated Plaintiff absent her participation in the conduct" protected by law. (**Exhibit A**, p. 11-12) (Doc. No. 86). It naturally follows that Defendant knew about Plaintiff's protected activity and acted not because of any mistake, accident, or other innocent reason. "An act or failure to act is 'willfully' done if done voluntarily and intentionally with the view to doing injury to another." <u>Standing v. Midgett</u>, 850 F. Supp. 396, 404 (E.D.N.C. 1993). Plaintiff proved Defendant's motivation—its reason— for terminating her was her protected activity; that is a voluntary, intentional act causing injury. Clearly, this underlying factual conclusion by the jury leads directly to the legal conclusion that Defendant's REDA violation was indeed willful.

Here, Plaintiff wanted to keep her job and to maintain the career path that she had worked so hard to achieve. Defendant was on notice of Plaintiff's protected activity long before it terminated her (Fallon Trial Transcript pp. 18-19, ll. 15-25, 1-3), and gave a different reason (the Facebook posts) when it did, but did not properly investigate her contention that she was being retaliated against. Fire Chief Jon Hannan refused to even allow Plaintiff a hearing to grieve her termination. (**Exhibit B** – Plaintiff's Exhibit 148). Defendant also argued fervently at trial that Plaintiff's building complaints were not considered by those who attended the September 2014

5

meetings about her Facebook posts, but the jury concluded that the decision to terminate her was motivated by her protected activity, and would not have happened without her complaints about 1517 North Graham Street. The decision to end Plaintiff's termination was entirely Defendant's and Plaintiff presented substantial evidence that Defendant's given reason for terminating her was not believable but was a cover-up for retaliation because of her REDA protected activity, and the jury was unanimously persuaded to so find. From the jury's determination that Defendant did know about the building complaints and was motivated by them to terminate Plaintiff, the only conclusion that logically follows is that Defendant acted knowingly or with reckless disregard for whether its conduct violated Plaintiff's rights. Thus, as a matter of law, Defendant's decision to terminate Plaintiff was a willful violation of REDA.

### III.    Willfulness Requires Treble Damages

Once the Court finds that Defendant's violation of REDA was willful, North Carolina law leaves no further discretion: Plaintiff's damages must be trebled:

> If in an action under this Article the court finds that the employee was injured by a willful violation of G.S. 95-241, the court **shall** treble the amount awarded under subdivision (4) of this subsection.

N.C. Gen. Stat. § 95-243(c) (emphasis added).

The amount that is subject to trebling is $464,538, the amount awarded by the jury and allocated to Count IV/Question Three on the Verdict Form for Plaintiff's REDA claim, for a total of $1,393,614 on the REDA claim.

### <u>CONCLUSION</u>

Defendant's acts of retaliation against Plaintiff for her protected activity of complaining about 1517 North Graham Street violated N.C. Gen. Stat. § 95-240, *et seq.* were clearly willful, as

unanimously found by the jury.  Accordingly, the jury's verdict of $464,538 on the REDA claim should be trebled for a total of $1,393,614 on Count IV/Question Three of the Verdict Form.

Accordingly, Plaintiff's Motion for Treble Damages should be granted, and the Court should amend the Judgment to reflect the amount of $1,393,614 for the REDA claim on Count IV of the Amended Complaint/Question Three of the Verdict Form.

Respectfully submitted, this the 2nd day of June, 2017.

**MALONEY LAW & ASSOCIATES, PLLC**

/s/ Margaret B. Maloney
Margaret Behringer Maloney, N.C. Bar No. 13253
1824 East 7th Street
Charlotte, NC 28204
mmaloney@maloneylegal.com
Telephone:  704-632-1622
Facsimile:  704-632-1623
*Attorneys for Plaintiff*

**CERTIFICATION OF COMPLIANCE**
**WITH WORD COUNT**

The undersigned attorney certifies that the foregoing **PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TREBLE DAMAGES UNDER THE NORTH CAROLINA RETALIATORY EMPLOYMENT DISCRIMINATION ACT** in the above-entitled action, in accordance with the Case Management Order signed by the Honorable Frank D. Whitney on August 2, 2016, contains 1,860 of 3,000 words allowed under the word count limit for trial briefs using Times New Roman proportional type. The undersigned relies on the word count reported by Microsoft Word Processing software.

This the 2nd day of June, 2017.

**MALONEY LAW & ASSOCIATES, PLLC**


/s/ Margaret B. Maloney
Margaret Behringer Maloney, N.C. Bar No. 13253
1824 East 7th Street
Charlotte, NC 28204
mmaloney@maloneylegal.com
Telephone: 704-632-1622
Facsimile: 704-632-1623
*Attorneys for Plaintiff*

Case 3:16-cv-00295-FDW-DCK   Document 95   Filed 06/02/17   Page 8 of 9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that this **PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TREBLE DAMAGES UNDER THE NORTH CAROLINA RETALIATORY EMPLOYMENT DISCRIMINATION ACT** was filed electronically and served electronically on the following:

> Sara R. Lincoln, N.C. State Bar No. 22744
> Kathleen K. Lucchesi, N.C. State Bar No. 24386
> LINCOLN DERR PLLC
> 4350 Congress Street, Suite 575
> Charlotte, NC 28209
> Telephone: (704) 496-4500
> Facsimile: (866) 393-6043
> Email: sara.lincoln@lincolnderr.com
> Email: kathleen.lucchesi@lincolnderr.com
> *Attorneys for Defendant*

This the 2nd day of June, 2017.

> **MALONEY LAW & ASSOCIATES, PLLC**
>
> /s/ Margaret B. Maloney
> Margaret Behringer Maloney, N.C. Bar No. 13253
> 1824 East 7th Street
> Charlotte, NC 28204
> mmaloney@maloneylegal.com
> Telephone: 704-632-1622
> Facsimile: 704-632-1623
> *Attorneys for Plaintiff*

9