UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:16-cv-295-FDW-DCK

| | | |
|---|---|---|
| CRYSTAL ESCHERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| CITY OF CHARLOTTE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

THIS MATTER is before the Court upon Defendant's Motion for Judgment as a Matter of Law, or in the Alternative, Motion for a New Trial (Doc. No. 105). The motions are fully briefed and are ripe for review. In addition, the Court conducted a hearing on August 23, 2017, to receive argument on certain limited issues. For the reasons that follow, Defendant's motion for Judgment as a Matter of Law is DENIED, and Defendant's Alternative Motion for a New Trial is GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

In the interests of judicial economy, the Court declines to provide a thorough recitation of the testimony, evidence, and arguments presented at the six-day trial before a jury in this matter. In sum, the causes of action centered on Defendant's termination of Plaintiff, a fire investigator for the Charlotte Fire Department ("CFD"). Defendant contended it terminated Plaintiff because she violated its social media policy by posting two racially inflammatory comments on Facebook ("Facebook Posts"). Plaintiff, on the other hand, claimed Defendant actually fired her because she complained to her father-in-law and City Councilwoman Claire Fallon about health and safety

1

issues in a new CFD building and about Defendant's mismanagement of money related to that building ("Building Complaints").

Plaintiff brought various causes of action against Defendant, including: (1) First Amendment violation for terminating her in retaliation for her Building Complaints; (2) First Amendment violation for terminating her in retaliation for her Facebook Posts; (3) wrongful discharge in violation of public policy under the North Carolina Constitution; (4) violation of the North Carolina Retaliatory Employment Discrimination Act ("REDA"); (5) wrongful discharge in violation of public policy under REDA; (6) Title VII gender discrimination; (7) wrongful discharge in violation of public policy based on her biological sex; (8) and Title VII retaliation. (Doc. No. 24).

At the close of evidence and upon Defendant's motion, the Court granted a directed verdict in favor of Defendant on Plaintiff's Title VII retaliation claim and her federal and State Constitution free speech claims based on the Facebook Posts. The Court ruled the Facebook Posts were not protected by the First Amendment because Plaintiff failed to establish that her interest in that speech outweighed Defendant's interest in providing effective and efficient services to the public. (Doc. No. 91-1, pp. 28-31). The Court submitted the six remaining issues to the jury.

After a full day of deliberation, the jury returned a verdict in favor of Plaintiff on her First Amendment and State Constitution claims—Questions One and Two on the verdict form— finding: (a) Plaintiff's Building Complaints were a motivating factor in Defendant's decision to terminate her employment; (b) Defendant would *not* have terminated Plaintiff's employment in the absence of the Building Complaints; and (c) Plaintiff was entitled to $309,692 on the First Amendment claim and $309,692 on the State Constitution claim.[1] (Doc. No. 86, pp. 1-2). The

_____

[1] The Court also asked the jury to answer two special interrogatories to assist the Court in determining whether the Building Complaints constituted protected speech under the First Amendment. The Court recognized that whether

jury also returned a verdict in favor of Plaintiff on her two state law claims under REDA—
Questions Three and Four—and awarded her $464,538 for each of those two claims. (Id. at 3).
The jury did not find Defendant liable for gender discrimination. In sum, the jury found Defendant
wrongfully terminated Plaintiff because of her Building Complaints in violation of the First
Amendment, public policy under the North Carolina Constitution, REDA, and North Carolina's
public policy expressed in REDA.

Defendant subsequently renewed its motion for judgment as a matter of law, arguing the
Building Complaints were not protected by the First Amendment, a question of law that the Court
needed to resolve before it could enter judgment. Following briefing by the parties, the Court
ruled the Building Complaints constituted protected speech and, therefore, denied Defendant's
motion. (Doc. No. 92).

The Clerk entered judgment consistent with the jury's verdict on June 2, 2017, (Doc. No.
93), and the parties timely filed the instant post-trial motions. Discussion of other background
information and evidence is set forth more fully as needed to explain the Court's decision as to
each motion below.

## II.  ANALYSIS

### A.  Standards of Review

#### 1.  Motion for Judgment as a Matter of Law

Pursuant to Rule 50 of the Federal Rules of Civil Procedure, a party that moved for
judgment as a matter of law at trial may, within twenty-eight days of the entry of judgment, renew

---

the Building Complaints constituted protected speech was a question of law for the Court to decide; however, the
Court submitted the special interrogatories to resolve outstanding factual questions that would allow the Court to
render a decision as a matter of law. The jury responded that: (d) it was reasonable to believe that Plaintiff's Building
Complaints caused, or could have caused, disharmony or disruption in the workplace; and (e) it was not reasonable to
believe the Building Complaints impaired Plaintiff's ability to perform her duties. (Doc. No. 86, pp. 1-2).

the request for judgment as a matter of law. In ruling on a renewed motion for judgment as a matter of law, a court may: (1) allow judgment on the verdict; (2) order a new trial; or (3) direct entry of judgment as a matter of law on the claims. Fed R. Civ. P. 50(b)(1)-(3). A "Rule 50(b) motion should be granted if a district court determines, without weighing the evidence or considering the credibility of the witnesses, that substantial evidence does not support the jury's findings." Konkel v. Bob Evans Farms, Inc., 165 F.3d 275, 279 (4th Cir. 1999) (citing White v. Cnty. of Newberry, 985 F.2d 168, 172 (4th Cir. 1993)).

### 2. Motion for a New Trial

Rule 59(a) of the Federal Rules of Civil Procedure provides that courts may grant a new trial after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1). Under this standard, "[a] new trial will be granted if (1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." Cline v. Wal–Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998) (citation and internal quotation marks omitted). In making this determination, courts may "weigh the evidence and consider the credibility of witnesses." Id. (citation omitted).

Bearing these principles in mind, the Court turns to the parties' arguments.

### B. Defendant's Motion for Judgment as a Matter of Law

### 1. Motivating factor in decision to terminate Plaintiff

Defendant argues throughout its post-trial filings that the jury incorrectly found Defendant would not have terminated Plaintiff absent her Building Complaints. In support of its argument, Defendant insists Plaintiff admitted in her Verified Amended Complaint and trial testimony that

she was terminated for her Facebook Posts.  As a result, Defendant asks the Court to find, as a matter of fact, that Plaintiff was terminated for her Facebook Posts, not her Building Complaints, or find as a matter of law that the Facebook Posts were a motivating factor in the decision to terminate her.

To succeed on her two free speech claims and her two REDA claims—Questions One through Four on the verdict form—Plaintiff was required to establish that her Building Complaints constituted protected activity and that they were a motivating factor in Defendant's decision to terminate her.  Grutzmacher v. Howard Cnty., 851 F.3d 332, 342 (4th Cir. 2017) (citations omitted); Wiley v. United Parcel Serv., Inc., 594 S.E.2d 809, 811 (N.C. Ct. App. 2004).  The burden then shifted to Defendant to prove, by a preponderance of the evidence, that it would have terminated Plaintiff regardless of her Building Complaints.  See e.g., Peters v. Jenney, 327 F.3d 307, 323 (4th Cir. 2003); N.C. Gen. Stat. § 95-241(b).  Logically then, in returning a verdict in favor of Plaintiff on those four claims, the jury necessarily found Defendant did  not meet its burden of proving that it terminated Plaintiff because of her Facebook Posts.  In other words, the jury found the Building Complaints were the "but for" cause of Plaintiff's termination.

The Court summarily agrees with Plaintiff's arguments that more than sufficient evidence supports the jury's verdict on this issue.  Furthermore, contrary to Defendant's argument, Plaintiff did not admit in her Amended Complaint that she was fired because of her Facebook Posts.  Throughout this case, Plaintiff has consistently maintained Defendant used her Facebook Posts as pretext to terminate her for the Building Complaints.  For example, Plaintiff alleged in her Amended Complaint:

> 341.  The Fire Department claims that it terminated [Plaintiff's] employment because her Facebook postings violated the Fire Department's social media policy, but the Fire Department merely used the Facebook postings to create a pretextual reason to terminate

[Plaintiff] in retaliation for her prior, protected expressions regarding concerns about risks to health and safety and also about financial mismanagement by the Fire Department.

(Doc. No. 24, ¶ 341). Likewise, in her brief in opposition to Defendant's motion for summary judgment, Plaintiff asserted "that her Facebook [P]osts serve as a mere pretext for the true reason" for her termination. (Doc. No. 49, p. 11). Defendant fails to point to any specific trial testimony by Plaintiff in which she admits her Facebook Posts were the reason for her termination. Indeed, Plaintiff spent much of her time at trial establishing she was terminated because of her Building Complaints and not her Facebook Posts. Accordingly, viewing the evidence in the light most favorable to Plaintiff, the evidence was sufficient for the jury to reasonably conclude Defendant did not meet its burden of establishing its affirmative defense.

To the extent Defendant argues the Court should have found, or should now find, as a matter of *fact* that the Facebook Posts were a motivating factor in Plaintiff's termination, Defendant's argument is unavailing. To state a claim for First Amendment retaliation, a plaintiff must show she engaged in protected speech and that the "speech was a substantial factor in the employer's termination decision." Grutzmacher, 851 F.3d at 342 (quoting McVey v. Stacy, 157 F.3d 271, 277-78 (4th Cir. 1998)). Whether the speech is protected by the First Amendment is a question of law for the Court, but the whether it was a substantial factor in the employer's termination decision is a question of fact for a jury. Lane v. Anderson, 660 F. App'x 185, 191 (4th Cir. 2016).

In dismissing Plaintiff's First Amendment claim based on the Facebook Posts and the corresponding State Constitution claim at the close of evidence, the Court concluded as a matter of law that Plaintiff's Facebook Posts were not protected under the First Amendment. (Doc. No. 91-1, pp. 28-29, ll. 19-25, 1-2). As the Court explained in detail in its June 2, 2017, Order (Doc.

No. 92), once the Court determined Plaintiff's speech was not protected, it was not required to address the factual issue of whether the Facebook Posts were a motivating factor in the decision to terminate Plaintiff. Grutzmacher, 851 F.3d at 348 (declining to reach the third prong of the McVey test after concluding the plaintiff's speech was not protected). Regardless, whether Plaintiff's speech was a motivating factor in the termination decision is a question of fact reserved for the jury, and in rejecting Defendant's affirmative defense for Questions One through Four on the verdict form, the jury unanimously found Defendant did not fire Plaintiff because of her Facebook Posts. Because substantial evidence supports the jury's finding, Defendant's Motion for Judgment as a Matter of Law is denied as to this issue.

### 2. Protected activity under REDA

Defendant next contends it is entitled to judgment as a matter of law on Plaintiff's REDA claim—Question Three on the verdict form. REDA prohibits retaliation against an employee for engaging in protected activity as defined by the statute. N.C. Gen. Stat. § 95-241(a). Thus, to succeed on a REDA claim, a plaintiff must demonstrate that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) the alleged retaliatory action was taken because the employee engaged in the protected activity. Wiley, 594 S.E.2d at 811 (N.C. Ct. App. 2004). As explained above, once the plaintiff presents a *prima facie* case of retaliatory termination, the burden shifts to the defendant to show, by a preponderance of the evidence, that it "would have taken the same unfavorable action in the absence of the protected activity." N.C. Gen. Stat. § 95-241(b).

Defendant first argues Plaintiff did not engage in protected activity as a matter of law, an argument the Court has rejected at various stages of this litigation. An employee engages in protected activity under REDA when she "in good faith does or threatens to . . . [f]ile a claim or

complaint, initiate any inquiry, investigation, inspection, proceeding or other action, or testify or provide information to any person with respect to" the Occupational Safety and Health Act of North Carolina ("OSHA"). N.C. Gen. Stat. § 95-241(a)(1)(b). "By its plain language, it is clear that REDA does not limit protected activities to the sole act of filing a formal claim under [OSHA]." Pierce v. Atl. Grp., Inc., 724 S.E.2d 568, 574 (N.C. Ct. App. 2012) (quoting Jurrissen v. Keystone Foods, LLC, No. 1:08CV128, 2008 WL 3925086, at *5 (M.D.N.C. Aug. 20, 2008)). On the other hand, "merely talking to an internal supervisor about potential safety concerns is not a 'protected activity' under REDA." Id. (quoting Jurrissen, 2008 WL 3925086, at *5); see Delon v. McLaurin Parking Co., 367 F. Supp. 2d 893, 902 (M.D.N.C.), aff'd, 146 F. App'x 655 (4th Cir. 2005) (concluding that a mere "complaint to a manager about a supervisor" is not protected under REDA).

Here, although Plaintiff did not file a formal claim under OSHA, she did more than merely complain to an internal supervisor. Evidence at trial showed that Plaintiff complained externally about health and safety concerns in a public building to her father-in-law, Ray Eschert, and to City Councilwoman Claire Fallon. As a result of Plaintiff's complaints, City Councilwoman Fallon toured the building with the Charlotte Mayor, City Manager, Fire Chief, and Deputy Fire Chief. At the least, then, in the light most favorable to Plaintiff, Plaintiff's Building Complaints initiated an inquiry, investigation, inspection, proceeding or other action or provided information to a person with respect to OSHA. N.C. Gen. Stat. § 95-241(a). Therefore, the Building Complaints constituted protected activity under REDA.

To the extent Defendant reasserts its argument that the jury improperly rejected its contention that it would have terminated Plaintiff absent her Building Complaints, the Court concludes, as it did above, in viewing the evidence in the light most favorable to Plaintiff,

substantial evidence supports the jury's finding that Defendant did not prove its affirmative defense. Accordingly, Defendant is not entitled to judgment as a matter of law on Plaintiff's REDA claim, and the Court denies Defendant's Motion for Judgment as a Matter of Law in its entirety.

## C. Defendant's Alternative Motion for a New Trial

### 1. Clear weight of the evidence

In its alternative motion for a new trial, Defendant first argues the jury's determination that Defendant would not have terminated Plaintiff absent her Building Complaints is against the clear weight of the evidence. (Doc. No. 106, pp. 10-11). Plaintiff disagrees and opposes Defendant's motion, arguing she provided strong evidence that her Building Complaints were a motivating factor for her termination and that Defendant's proffered reason for her termination—the Facebook Posts—was pretextual. For example, Plaintiff points to evidence that Defendant had knowledge of Plaintiff's Building Complaints, failed to thoroughly investigate the citizen who complained about her Facebook Posts, and did not provide her with a fair and impartial hearing to appeal her termination.

Following a thorough review of the transcripts and evidence from this lengthy trial, as well as the applicable law, the Court concludes Defendant has not shown that the verdict is against the clear weight of the evidence. The Court has already found that substantial evidences supports the jury's finding. The Court observed the jurors listening attentively to the presentation of testimony, other evidence, and argument, and the jury's verdict reflects that it paid careful attention to the details of the evidence presented at the trial. The jury made credibility determinations that do not appear inconsistent. Defendant has failed to satisfy its burden to show the verdict is against the clear weight of the evidence. Accordingly, a new trial is not warranted on this issue.

## 2. Prejudicial errors

Defendant also argues the Court committed a number of evidentiary and procedural errors that were so prejudicial as to entitle it to a new trial. As explained below, Defendant's arguments are without merit.

### a. Findings concerning the motivating factor in Plaintiff's termination

Defendant contends the Court erred by failing to make a finding or to allow the jury to make a finding as to whether Plaintiff's Facebook Posts were a motivating factor in Defendant's decision to terminate Plaintiff. Specifically, Defendant argues the Court should have informed the jury that it dismissed Plaintiff's free speech claims based on the Facebook Posts, allowed Defendant to explain the Court's dismissal, or allowed the jury to expressly determine whether the Facebook Posts were a motivating factor.

First, as the Court explained in its June 2, 2017, Order and above, the Court did not, nor was it required to, make a finding as to whether Plaintiff's Facebook Posts were a motivating factor in the termination decision. (Doc. No. 92, p. 10). That determination is a factual question for the jury.

Furthermore, although the Court declined to instruct the jury that the Court dismissed Plaintiff's First Amendment claim based on the Facebook Posts, the Court did not prevent Defendant from arguing to the jury that it terminated Plaintiff because of her Facebook Posts and not her Building Complaints:

> [DEFENDANT]: Your Honor, is the Court intending to instruct the jury on the fact that it has granted directed verdict on the plaintiff's First Amendment claim on the Facebook issue?
>
> THE COURT: No. You can explain to them that our position is she was terminated for the Facebook post and, if you agree, then you

check off our affirmative defense. You -- you're the one responsible for working the verdict sheet for the verdict you want. So you point out answer question 2A this way or that way or whatever.

[DEFENDANT]: Okay.

THE COURT: I don't want to bias the jury as to this Court's rulings.

[DEFENDANT]: I understand.

(Trial Tr., May 10, 2017, pp. 113-114).[2] Indeed, it was Defendant's position throughout the trial that it terminated Plaintiff for her Facebook Posts, and the jury rejected that position.

In addition, even though the verdict form did not expressly refer to the Facebook Posts, the jury had ample opportunities to find Defendant terminated Plaintiff because of the Facebook Posts rather than the Building Complaints. The Court instructed the jury on four separate questions that even if it finds that the Building Complaints were "a motivating factor in Defendant's decision to take adverse action against her, Defendant can still avoid liability if it can prove, by a preponderance of the evidence, that it would have made the same decision even if plaintiff's speech had never occurred." (Doc. No. 96-1, pp. 9, 11).

Despite Defendant's evidence and argument to the jury that it fired Plaintiff because of her Facebook Posts, the jury twice answered "No" to the following question on the verdict form: "[H]as Defendant proven by a preponderance of the evidence that it would have terminated Plaintiff's employment even in the absence of Plaintiff's reported concerns about the 1517 North Graham Street Building?" (Doc. No. 86). By answering "No," the jury expressly determined Defendant did not terminate Plaintiff because of her Facebook Posts. Accordingly, contrary to Defendant's argument, the Court did not "deprive [Defendant] of a fair opportunity to obtain a finding of fact from the jury on this question." (Doc. No. 106, p. 12).

---

[2] Except where otherwise indicated, the Court is citing to an official, certified transcript provided to the parties and to the Court for post-trial motions.

### b. Facebook screenshots

Next, Defendant argues the Court erroneously admitted screenshots of Facebook posts allegedly made by other fire department or city employees.  Plaintiff sought to introduce these screenshots to demonstrate that other employees similarly situated to Plaintiff made comments on Facebook that were equally as inappropriate as Plaintiff's Facebook Posts but that those employees faced little or no discipline.  There were two groups of screenshots: one group found by Jason Eschert, Plaintiff's husband, and one group e-mailed to Plaintiff and her husband as well as Defendant from an "Antique Fire Trucks" email address.

The Court did not err in admitting the screenshots.  Plaintiff properly authenticated the screenshots under Federal Rule of Evidence 901, which provides that, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  As the Fourth Circuit has explained, "the burden to authenticate under Rule 901 is not high—only a prima facie showing is required," and a "district court's role is to serve as gatekeeper in assessing whether the proponent has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic."  United States v. Hassan, 742 F.3d 104, 133 (4th Cir. 2014) (internal quotation marks and citation omitted).

Overruling Defendant's objection at trial as to foundation, the Court ruled Mr. Eschert had properly authenticated the screenshots under Fed. R. Evid. 901.  Mr. Eschert testified he personally took one group of the screenshots of Facebook posts on his phone, those screenshots notated the date and time he took them, and the Facebook posts he screenshotted were publicly available.  He further testified that he made the screenshots available to Defendant at the time of Plaintiff's termination hearing and that Defendant reviewed at least one of the screenshots.  Moreover, a fire

investigator, Andrew Bennett, testified that some of the Facebook posts were, in fact, his personal Facebook posts. As for the screenshots emailed to the Escherts from an "Antique Fire Truck" email address, Mr. Eschert testified he received these social media postings as attachments to several emails.

Because Mr. Eschert testified as to the process he performed to download the screenshots, and there did not appear to be any procedural defects in his process, the Court concluded at trial that Plaintiff presented a satisfactory foundation from which the jury could reasonably find that the evidence is authentic. Whether the declarant of each Facebook post was actually a similarly-situated employee to Plaintiff and whether the declarant actually posted the comments were arguments that Defendant could make on cross-examination. It was up to the jury thereafter to determine the weight to give to the evidence. Defendant presents no compelling argument as to why this Court's ruling was incorrect.

Defendant also summarily argues the screenshots constituted inadmissible hearsay; however, the Court admitted the content of the screenshots to show that allegedly similarly situated individuals posted public statements akin to Plaintiff's Facebook Posts with little or no disciplinary action. The Court did not admit them for the truth of the matter asserted and, therefore, they were not hearsay. The Court instructed the jury that it may only consider the statements for a limited purpose. In addition, to the extent the name of the person making the Facebook post could have been introduced for the truth of the matter asserted—that is, to show that that individual actually made the assertion—the Court required Plaintiff to redact the name of the person posting the comments.

Accordingly, because Plaintiff established a sufficient foundation to allow the jury to consider whether the evidence was authentic, and because the evidence was not hearsay, the Court

did not err in admitting it. Significantly, even if the Court did err, the error was harmless because Defendant has wholly failed to establish how the screenshots unfairly prejudiced Defendant or affected the jury's verdict so as to constitute a miscarriage of justice and entitle Defendant to a new trial.

### c. Double recovery

Defendant next argues it is entitled to a new trial under Rule 59(a) because the jury's award of damages is duplicative. When a defendant moves for a new trial under Rule 59(a) challenging the jury's award of damages, the Court may *sua sponte* grant a new trial *nisi* remittitur. Def. Indus., Inc. v. Nw. Mut. Life Ins. Co., 809 F. Supp. 400, 413 (D.S.C. 1992), aff'd, 989 F.2d 492 (4th Cir. 1993). "Remittitur, which is used in connection with Fed. R. Civ. P. 59(a), 'is a process, dating back to 1822, by which the trial court orders a new trial unless the plaintiff accepts a reduction in an excessive jury award.'" Jones v. SouthPeak Interactive Corp. of Delaware, 982 F. Supp. 2d 664, 672–73 (E.D. Va. 2013) (quoting Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc., 99 F.3d 587, 593 (4th Cir. 1996)), aff'd, 777 F.3d 658 (4th Cir. 2015). A trial court has the discretion to "order a new trial without qualification, or conditioned on the verdict winner's refusal to agree to a reduction (remittitur)." Gasperini v. Ctr. for Humanities, 518 U.S. 415, 433 (1996). "[A] remittitur should be ordered when a jury award is so excessive that it will result in a miscarriage of justice." Hair Club for Men, LLC v. Ehson, No. 1:16-CV-236, 2016 WL 6780310, at *1 (E.D. Va. Nov. 14, 2016) (citing Cline, 144 F.3d at 305). "The decision as to whether damages are excessive is 'entrusted to the sound discretion of the district court.'" Id. (quoting Robles v. Prince George's Cty., Md., 302 F.3d 262, 271 (4th Cir. 2002)).

It is well-settled that a plaintiff "may not receive a double recovery under different legal theories for the same injury." Gordon v. Pete's Auto Serv. of Denbigh, Inc., 637 F.3d 454, 460

(4th Cir. 2011). While it is appropriate for a jury to make separate awards for each of a plaintiff's claims, it is up the trial court to adjust the ultimate award to avoid double recovery. Therefore, the Court must determine whether Plaintiff received a double recovery and, if so, whether the double recovery results in an award of damages so excessive that it will result in a miscarriage of justice.

Here, all four claims for which the jury found Defendant liable involve causes of action with the same elements of proof resulting in the same injury. As an initial matter, there can be no doubt that Questions One and Two, Plaintiff's free speech claims, are duplicative of one another and that Questions Three and Four, Plaintiff's REDA claims, are duplicative of one another. The parties agreed that the instructions for those two pairs of questions should be identical, such that the instructions for Question Two read simply: "All the instructions in Question One apply to Question Two," and the instructions for Question Four read: "All the instructions in Question Three apply to Question Four."

Taking the issue one step further, the elements of Plaintiff's two free speech claims and her two REDA claims are also the same. All four claims require Plaintiff to establish she engaged in protected activity that was a substantial or motivating factor in Defendant's decision to terminate her, and for all four claims, the burden then shifted to Defendant to prove that it would have terminated Plaintiff even absent her Building Complaints. For all four claims, the protected activity at issue was Plaintiff's Building Complaints, and her injury was termination in retaliation for that speech. In other words, Plaintiff did not argue for any damages for any conduct other than her termination for making her Building Complaints. She has, therefore, inextricably intertwined the damage awards for all four claims, and the Court has no basis from which to conclude that the damages sought in Questions One, Two, Three, or Four were based on anything other than the

effect of her termination in retaliation for her Building Complaints.  Plaintiff has failed to show how the jury's award of damages on any of the claims compensates her for a separate injury.  The Court, therefore, must conclude that allowing Plaintiff to receive the damages awarded for all four claims would constitute a double recovery.

Plaintiff argues there is no double recovery because the sum of all four awards equals the exact amount that she asked for in lost wages.  Plaintiff, however, has presented no Fourth Circuit authority, and the Court has found none, allowing the Court to aggregate the four awards of damages when the claims are so obviously duplicative in nature.

Moreover, any potential jury confusion due to the repetitive nature of the claims and jury instructions is of Plaintiff's own making.  Plaintiff elected to allege duplicative causes of action, and at the charge conference, the Court made Plaintiff aware of the duplicative nature of her claims and the possibility of a verdict resulting in a double recovery.  Specifically, in deciding whether to instruct the jury that Questions One and Two are identical, the Court stated:

> Jurors are permitted to have a split verdict.  We might have a big argument about this later on, but generally an inconsistent verdict is – is appropriate because jurors are allowed to work out their differences in the jury room by having an inconsistent verdict. *However, the Court will not award double damages.*

(Unofficial Trial Tr., May 9, 2017) (emphasis added).[3]  The Court explained to Plaintiff that whether duplicate claims are submitted to the jury is "the plaintiff's call right now," but "you can't double dip.  There's no doubt about that."  (Id.).  Later in the charge conference, the Court readdressed the issue:

> THE COURT: You have to decide what you want to do with those state constitutional claims.  Four claims.  Are you going with two federal and two state, or are you just going two federal.  You have to make that decision.  It's up to you.

---

[3] The transcript from May 9, 2017, is not yet certified; however, the court reporter has confirmed its accuracy.

> [PLAINTIFF'S COUNSEL]: Okay. I don't think it's -- I just need
> to think about the damages part. And I don't know.
>
> THE COURT: It's your call. You properly pled it. The four can go
> forward, but you're just asking the jury to rethink what it did.
>
> [PLAINTIFF'S COUNSEL]: No, I understand.

(Id.). Despite the Court's warning, Plaintiff still chose to submit the duplicative claims to the jury. She did not request an instruction on double recovery, nor did she object to the damages instructions or verdict form. In fact, when the jury asked during its deliberation for "further direction on the amount of leeway we have on dollar amount we can award for actual damages," Plaintiff agreed that the Court should simply instruct the jury to review the damages instructions already provided.

Furthermore, prior to Plaintiff's closing arguments, the Court suggested to Plaintiff's counsel that if she "want[ed] the jury to reach a certain verdict, [she] ha[d] to explain to them what boxes -- what questions answered this way or that way." (Trial Tr., May 10, 2017, p. 114). Plaintiff, however, chose not to review the verdict form with the jury during her closing arguments or explain to the jury how to answer the duplicative questions.

Because Plaintiff may not be awarded damages more than once for the same injury, her award that includes a double (or in this case quadruple) recovery is excessive and, if allowed, would result in a miscarriage of justice. See Hair Club for Men, LLC, 2016 WL 6780310, at *3 (reducing compensatory damages where the damages were awarded "for the same injury, based on the same evidence"); but see Silicon Knights, Inc. v. Epic Games, Inc., 917 F. Supp. 2d 503, 526 (E.D.N.C. 2012) (denying a motion for remittitur of compensatory damages under Rule 59(a) because there was no double recovery), aff'd, 551 F. App'x 646 (4th Cir. 2014). The appropriate award is $464,538, which is the greater of the four amounts that the jury awarded to Plaintiff. See

<u>Vanwyk Textile Sys., B.V. v. Zimmer Mach. Am., Inc.</u>, 994 F. Supp. 350, 358–59 (W.D.N.C. 1997) ("[R]eduction only to the highest amount that the jury could properly have awarded . . . is the only theory that has any reasonable claim of being consistent with the Seventh Amendment." (quotation marks and citation omitted)).

Accordingly, Defendant's motion for a new trial outright based on the issue of double recovery is denied; however, because the award is excessive and must be reduced to avoid a miscarriage of justice, the Court will grant a new trial *nisi* remittitur. Plaintiff must agree to remit damages in excess of $464,538 upon the condition that the Court will grant a new trial on the issue of damages if she fails to do so. In other words, Plaintiff has the option of submitting to a new trial on the issue of damages or accepting $464,538.

### d. Other alleged errors

Defendant's remaining argument that it is entitled to a new trial due to four other prejudicial errors is unavailing and notably devoid of any supporting legal authority. First, Defendant argues the Court repeatedly misapplied the hearsay rule, but it cites to no specific testimony or evidence the Court erroneously excluded. Defendant's conclusory argument makes it impossible for the Court to determine how, if at all, Defendant was prejudiced by any evidentiary ruling.

Second, Defendant argues the Court improperly excluded Major Sherie Pearsall's testimony about the meaning and effect of the word "thug," while it allowed Plaintiff's witnesses, John Barnett and Reverend Corinne Mack, to testify about their opinions of the term. As an initial matter, Defendant did not object to Mr. Barnett's testimony about the meaning of the word "thug" at trial and has failed to show how the Court's admission of his testimony was plain error. As for Reverend Mack, she is a prominent local civil rights leader in Charlotte. As the Court explained at trial, because she is a representative of the African American community and the NAACP, her

lay opinion of the meaning and effect of the word "thug" could be useful for the jury to determine how, if at all, Plaintiff's speech impacted, or could impact, the African American community. On the other hand, although Major Pearsall is a high-ranking member of the Charlotte-Mecklenburg Police Department, she testified that her only responsibility was to determine where Plaintiff worked, and once she discovered Plaintiff worked for CFD, she handed the case over to the fire department. Thus, the Court properly excluded her opinion about the term "thug" as irrelevant. Regardless, Defendant has failed to show how any alleged error here was so prejudicial as to constitute a miscarriage of justice.

Third, Defendant argues that had the Court allowed Defendant to present detailed argument on its Rule 50 motion for judgment as a matter of law on all of Plaintiff's claims, this case likely would not have been submitted to the jury at all. Defendant's argument is simply not true. The Court heard argument from Defendant as to most of Plaintiff's claims either at the close of Plaintiff's evidence or at the close of all evidence and, in fact, the Court granted Defendant's Rule 50 motions as to Plaintiff's Title VII retaliation claim and her First Amendment claim based on the Facebook Posts because those claims lacked a legally sufficient evidentiary basis to find for Plaintiff. See Fed. R. Civ. P. 50(a)(1). The Court, however, deferred ruling on the other claims because there were either outstanding legal issues the Court wanted to consider after the jury returned a verdict or, viewing the evidence in the light most favorable to Plaintiff, there was sufficient evidence to submit the remaining issues to the jury. The Court did not find it necessary to delay the case further by hearing Defendant repeat the same arguments it made at summary judgment and during the trial, and hearing further argument would not have changed the Court's decision to submit six issues to the jury.

Finally, Defendant takes issue with commentary by Plaintiff's counsel in open court during

the trial.  Granting a new trial based on statements of either party's counsel requires the court to undertake a "totality of the circumstances" review considering, for example, the nature of the comments, their frequency, their possible relevancy to the issues before the jury, and the manner in which the parties and the court treated the comments.  <u>Wiley v. CSX Transp., Inc.</u>, 944 F.2d 903 (4th Cir. 1991).  The court has considerable discretion in determining whether the conduct by counsel is so prejudicial as to require a new trial.  <u>Id</u>.  Here, attorneys on both sides of the litigation interjected personal comments in front of the jury throughout the contentious trial, but these remarks did not so permeate the trial such that the jury was prejudiced.  On multiple occasions, the Court instructed the jury to disregard the statements of counsel and reminded the jury that statements and arguments made by counsel were not evidence.  Accordingly, in view of the totality of the circumstances, the Court concludes that any commentary made by Plaintiff's counsel did not result in the necessary prejudice to warrant a new trial.

### III. CONCLUSION

IT IS, THEREFORE, ORDERED that Defendant's Motion for Judgment as a Matter of Law, or in the Alternative, Motion for a New Trial (Doc. No. 105) is GRANTED IN PART and DENIED IN PART as follows:

1) The Motion for Judgment as a Matter of Law is denied in its entirety; and

2) The alternative Motion for a New Trial outright is denied; however, the Court grants a new trial *nisi* remittitur.  Plaintiff shall agree to remit damages in excess of $464,538 by filing

a document **no later than Wednesday, August 30, 2017**, indicating that she agrees to the remittitur.  Plaintiff's failure to do so will result in the Court granting a new trial on the issue of damages.[4]

IT IS SO ORDERED.

Signed: August 23, 2017

Frank D. Whitney
Chief United States District Judge

---

[4] The Court acknowledges Plaintiff has filed several post-trial motions, including a Motion for Treble Damages under the North Carolina Retaliatory Employment Discrimination Act (Doc. No. 94), a Motion for Attorneys' Fees, Interest, and Costs (Doc. No. 99), and a Supplemental Motion for Attorneys' Fees, Interest, and Costs (Doc. No. 109).  Until Plaintiff decides to accept the remittitur or have a new trial on the issue of damages, these motions are not ripe for review.