UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:16-cv-295-FDW-DCK

| CRYSTAL ESCHERT, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | ORDER |
| CITY OF CHARLOTTE, | ) | |
| Defendant. | ) | |

THIS MATTER is before the Court upon Plaintiff's Motion for Treble Damages (Doc. No. 94), Plaintiff's Motion for Attorneys' Fees, Interest, and Costs (Doc. No. 99), and Plaintiff's Supplemental Motion for Attorneys' Fees, Interest, and Costs (Doc. No. 109). The motions are fully briefed and are ripe for review. In addition, the Court conducted a hearing on August 23, 2017, to receive argument on certain limited issues, including Plaintiff's Motion for Treble Damages. For the reasons that follow, Plaintiff's Motion for Treble Damages is DENIED, and her two Motions for Attorneys' Fees, Interest, and Costs are GRANTED.

**I. BACKGROUND**

In its August 23, 2017, Order, this Court set forth a detailed recitation of the facts of this case. (Doc. No. 124). Therefore, the facts and portion of that Order entitled "Background" are hereby adopted and incorporated by reference as if fully set forth herein. In sum, the causes of action centered on Defendant's termination of Plaintiff, a fire investigator for the Charlotte Fire Department ("CFD"). Defendant contended that it terminated Plaintiff because she violated its social media policy by posting two racially inflammatory comments on Facebook ("Facebook Posts"). Plaintiff, on the other hand, claimed that Defendant actually fired her because she

1

complained to her father-in-law and City Councilwoman Claire Fallon about health and safety issues in a new CFD building and about Defendant's mismanagement of money related to that building ("Building Complaints"). A jury awarded Plaintiff $309,692 on each of her two free speech claims and $464,538 on each of her two claims under the North Carolina Retaliatory Employment Discrimination Act ("REDA"). (Doc. No. 86). Essentially, the jury found Defendant wrongfully terminated Plaintiff because of her Building Complaints in violation of the First Amendment, public policy under the North Carolina Constitution, REDA, and North Carolina's public policy expressed in REDA.

In its August 23, 2017, Order addressing Defendant's post-trial motions, this Court concluded the jury award included a double (or in this case quadruple) recovery, which, if allowed, would result in a miscarriage of justice. (Doc. No. 124). Consequently, the Court granted a new trial *nisi* remittitur, giving Plaintiff the option of submitting to a new trial on the issue of damages or accepting $464,538. The Court deferred ruling on Plaintiff's Motion for Treble Damages and her two Motions for Attorneys' Fees, Interest, and Cost until after Plaintiff made her election. On August 30, 2017, Plaintiff notified the Court that she "agrees to remit damages in excess of $464,538." (Doc. No. 128). She further requested the Court grant her pending motions for treble and damages and attorneys' fees, interest, and costs. (Id.) Discussion of other background information and evidence is set forth more fully as needed to explain the Court's decision as to each motion below.

## II. ANALYSIS

### A. Treble Damages

Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, Plaintiff requests the Court amend the judgment by trebling the jury's award of $464,538 for her REDA claim. A Rule 59(e)

2

motion to alter, amend, or vacate a prior judgment "may only be granted in three situations: '(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.'" Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 378 (4th Cir. 2012) (quoting Zinkand v. Brown, 478 F.3d 634, 637 (4th Cir. 2007)). A Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to entry of judgment." Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998) (citation omitted). Furthermore, "it is an extraordinary remedy that should be applied sparingly." Mayfield, 674 F.3d at 378 (citing EEOC v. Lockheed Martin Corp., 116 F.3d 110, 112 (4th Cir. 1997)).

REDA allows for the recovery of damages for a retaliatory employment termination. N.C. Gen. Stat. § 95-243. To succeed on a REDA claim, a plaintiff must demonstrate: (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) the alleged retaliatory action was taken because the employee engaged in the protected activity. Wiley v. United Parcel Serv., Inc., 594 S.E.2d 809, 811 (N.C. Ct. App. 2004). Once the plaintiff presents a *prima facie* case of retaliatory termination, the burden shifts to the defendant to show, by a preponderance of the evidence, that it "would have taken the same unfavorable action in the absence of the protected activity." N.C. Gen. Stat. § 95-241(b). An employee may seek, *inter alia*, "[c]ompensation for lost wages, lost benefits, and other economic losses that were proximately caused by the retaliatory action or discrimination." Id. § 95-243(c).

"If . . . the court finds that the employee was injured by a willful violation of [the section prohibiting discriminatory or retaliatory action by an employer], the court shall treble the amount awarded." Id. A REDA violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by [the] statute." Morris v. Scenera

3

Research, LLC, 788 S.E.2d 154, 160-61 (N.C. 2016) ("Morris II"). The trial court, rather than the jury, must make the finding of willfulness. Id. at 161.

Here, Defendant did not willfully violate REDA. Although the jury rejected Defendant's argument that it terminated Plaintiff because of her Facebook Posts and found, instead, that it terminated Plaintiff because of her Building Complaints, the jury "made no statement regarding [Defendant's] *belief*" that it was entitled to terminate Plaintiff because of the Facebook Posts. Morris v. Scenera Research, LLC, 747 S.E.2d 362, 377 (N.C. Ct. App. 2013) ("Morris I") (finding no willful violation of REDA when the defendants offered evidence that the employer "held a good faith belief that it was not in violation of REDA"), aff'd in part, rev'd in part, Morris II, 788 S.E.2d 154 (N.C. 2016). Defendant offered evidence that it believed Plaintiff's Facebook Posts violated Defendant's social media policy and constituted a valid ground for terminating Plaintiff. Indeed, Plaintiff cites no evidence indicating Defendant fabricated the Facebook Posts or engineered a cover-up. Morris II, 788 S.E.2d at 161 (affirming the lower court's finding of no willful violation of REDA when "[P]laintiff cite[d] no specific evidence indicating the existence of a cover-up, and the record show[ed] none.").

The jury's rejection of Defendant's purported reason for terminating Plaintiff does not automatically cause Defendant's REDA violation to be willful, as Plaintiff contends. Under that logic, every violation of REDA would be willful, and every successful Plaintiff would be entitled to treble damages. Because the Court finds Plaintiff failed to establish Defendant either knew or showed reckless disregard as to whether its conduct was prohibited by REDA, the Court denies Plaintiff's motion for treble damages.

**B. Attorneys' Fees and Costs**

Plaintiff requests the Court award attorneys' fees and costs incurred in successfully

prosecuting her claims under the First Amendment and REDA. (Doc. Nos. 99, 109). Plaintiff calculates her attorneys' fees to be $561,166.25 plus costs in the amount of $66,853.05, for a total award of $628,019.30.[1]

Under 42 U.S.C. § 1988, the Court may, in its discretion, award a prevailing party on a First Amendment claim "a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). The Supreme Court has directed that the purpose of § 1988 is to ensure meaningful and effective access to the judicial system for persons with civil rights grievances. Hensley v. Eckerhart, 461 U.S. 424, 429 (1983). Thus, although the decision to award a fee under § 1988 is discretionary, "a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Id. (quotations marks and citations omitted). Similarly, under REDA, "[t]he court may award to the plaintiff and assess against the defendant the reasonable costs and expenses, including attorneys' fees, of the plaintiff in bringing an action pursuant to this section." N.C. Gen. Stat. § 95-243(c).

Here, there is no doubt, and Defendant does not dispute that, Plaintiff is a "prevailing party" for purposes of attorneys' fees. See Hensley, 461 U.S. at 433 ("[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." (citation omitted)). Rather, Defendant argues the Court should deny Plaintiff attorneys' fees because of her counsel's alleged unethical conduct including, for example, "repeatedly and falsely accus[ing] the City of engaging in unethical practices," "intentionally flouting discovery rules," "forcing unnecessary conference with the Court," "interjecting personal comments in front of the jury," and

---

[1] Plaintiff's first Motion for Attorneys' Fees, Interest, and Costs (Doc. No. 99) includes fees and costs incurred from September 29, 2014, through trial on May 11, 2017. Her Supplemental Motion for Attorneys' Fees, Interest, and Costs (Doc. No. 109) includes additional fees and costs associated with the trial and post-trial matters. (Doc. No. 110-1). This amount reflects the combined total included in both motions.

5

being unprepared "to comply with the rules of evidence." (Doc. No. 111, pp. 7-8). Throughout this contentious trial, however, attorneys on both sides of the litigation argued strenuously over discovery disputes and interjected personal comments in front of the jury. Indeed, Plaintiff was successful on many of her discovery disputes leading up to the trial. Although on several occasions the Court felt compelled to instruct the jury to disregard the statements of counsel, the Court does not believe counsel's conduct rises to the level of special circumstances to render an award of attorneys' fees unjust. Accordingly, because Plaintiff is the prevailing party on both her free speech and REDA claims, the Court finds she is entitled to attorneys' fees under both § 1988 and REDA.

When awarding attorney's fees, courts must assess whether the amount requested by the moving party is reasonable. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley, 461 U.S. at 433. The result of this calculation, the lodestar figure, is strongly presumed to be reasonable. City of Burlington v. Dague, 505 U.S. 557, 562 (1992). In assessing the lodestar figure, courts consider twelve factors set out in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974): (1) the time and labor required to litigate the suit; (2) the novelty and difficulty of the questions presented by the lawsuit; (3) the skill required properly to perform the legal services; (4) the attorney's opportunity costs in pursuing the litigation; (5) the customary fee for such services; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the attorney's professional relationship with the client; and (12) awards in similar cases. See Barber v. Kimbrell's, Inc., 577

F.2d 216, 226 (4th Cir. 1986) (adopting the Johnson factors). Here, after considering all relevant facts and circumstances, the Court concludes $628,019.30 is a reasonable fee based on the actual rates and hours spent by Plaintiff's counsel.

The Court has carefully reviewed the billing records submitted and finds the hours expended by Plaintiff's counsel, as demonstrated by the affidavits attached to Plaintiff's motions (see Doc. Nos. 100-1 through -5, 110-1), to be reasonable. Plaintiff prevailed on her free speech and REDA claims, resulting in a favorable jury verdict and award of damages. Counsel billed approximately 2,010 hours from September 29, 2014, to July 14, 2017, apportioned between attorneys, contract attorneys, paralegals, interns, and staff members. This amount is reasonable, particularly in light of (1) the complex nature of this litigation, which involved multiple federal and State constitutional questions, (2) the length of the case, including a six-day jury trial and full day of deliberation, (3) the quantity of discovery, and (4) the attorneys' skill and experience.

Plaintiff's counsel has been practicing law for over thirty years, and the complexity and difficulty of the questions raised in this action required a high degree of skill to successfully present Plaintiff's case through to trial. In addition, this case took nearly three years to reach a resolution and involved extensive and time-consuming discovery and evidentiary issues requiring the Court's intervention on numerous occasions. For example, Plaintiff successfully challenged Defendant's refusal to follow the parties' joint stipulation regarding discovery deadlines and refusal to produce relevant and responsive personnel files without a Court order. While Defendant takes issue with certain "vague" billing entries, the Court finds counsel's billing entries adequately describe the work performed on behalf of the client and provide sufficient information for the Court to review the tasks performed, without delving into unnecessary detail that could possibly expose information protected under the attorney-client privilege and/or work product doctrine. The Court

also considers Plaintiff's decision not to seek recovery of fees associated with over 255 hours of time related to the prosecution of her case and her self-imposed reduction of other fees she considered to be duplicative as an additional indication of the reasonableness of the recovery sought.

Contrary to Defendant's argument, the Court should not reduce Plaintiff's fee award simply because Plaintiff did not prevail on every claim. Plaintiff was successful on four out of eight causes of action. Although the hours submitted by Plaintiff's counsel relate to both successful and unsuccessful claims against Defendant, all claims in this case were based on the same intertwined nucleus of operative facts—that is, Plaintiff's termination from the fire department. While Plaintiff presented several legal theories for her termination, it is reasonable that most of the attorneys' time was directed at all claims, as opposed to on a claim-by-claim basis. Because the hours submitted related to the issues on which Plaintiff prevailed and issues that are inextricably intertwined, all of the work of Plaintiff's attorneys related to the litigation as a whole, and apportionment of fees is unnecessary. See Hensley, 461 U.S. at 435 (finding "it difficult to divide the hours expended on a claim-by-claim basis" when "the plaintiff's claims for relief . . . involve a common core of facts or [are] based on related legal theories" because the efforts of the plaintiffs' counsel may have been "devoted generally to the litigation as a whole").

The Court further notes that Defendant does not challenge the reasonableness of the rates charged by Plaintiff's counsel. Nevertheless, the Court independently finds the rates to be reasonable. Plaintiff's counsel, Margaret Maloney, has been practicing law since 1986 and focuses primarily on employment law and litigation. The amount billed for her and her staff's time reasonably ranges from $100 to $350 per hour depending on skill level and experience. Plaintiff's counsel supports her requests with declarations stating her standard hourly billing rates, as well as

declarations of several local attorneys with extensive experience litigating complex cases, who opine that the requested rates are reasonable. (See Doc. Nos. 100-1 through -5). Indeed, based on the evidence before it and the Court's own knowledge of the hourly rates charged by litigants in this district, the Court finds Plaintiff's counsel's hourly rates are reasonable.

Given the time and labor Plaintiff's counsel expended according to her affidavits, the complexity of the constitutional issues raised, the results of the litigation, and the qualifications of the attorneys and staff as set forth in the affidavits, the Court finds the amount sought by Plaintiff to be reasonable. Therefore, Plaintiff is entitled to an award of attorneys' fees and costs in the amount of $628,019.30.

## C. Interest

Plaintiff also moves the Court to amend the judgment to include pre- and post-judgment interest. (Doc. No. 99). Notably, Defendant does not appear to dispute that Plaintiff is entitled to interest. The Court entered Judgment in this case on June 2, 2017. (Doc. No. 93). Under N.C. Gen. Stat. § 24-5:

> In an action other than contract, any portion of a money judgment designated by the fact finder as compensatory damages bears interest from the date the action is commenced until the judgment is satisfied. Any other portion of a money judgment in an action other than contract, except the costs, bears interest from the date of entry of judgment under G.S. 1A-1, Rule 58, until the judgment is satisfied. Interest on an award in an action other than contract shall be at the legal rate.

N.C. Gen. Stat. § 24-5(b). "Both North Carolina courts and the Fourth Circuit, in an unpublished opinion, have recognized that an award of prejudgment interest is mandatory." Bridgetree, Inc. v. Red F Mktg. LLC, No. 3:10-CV-00228-FDW, 2013 WL 443698, at *21 (W.D.N.C. Feb. 5, 2013); see also Castles Auto & Truck Serv., Inc. v. Exxon Corp., 16 F. App'x 163, 168 (4th Cir. 2001) (concluding that subsection 24-5(b) is "unambiguously mandatory"); Hamby v. Williams, 676

9

S.E.2d 478, 481 (N.C. Ct. App. 2009) (same). Accordingly, Plaintiff's motion for prejudgment interest is granted, and Plaintiff shall be awarded prejudgment interest at the statutory rate of eight percent[2] for her compensatory damages of $464,538 from May 5, 2016, to June 1, 2017.

Regarding post-judgment interest, 28 U.S.C. § 1961(a) provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." See Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1031 (4th Cir. 1993) ("[F]ederal law mandates the awarding of post-judgment interest."). "Such interest shall be calculated from the date of entry of the judgment, at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment." 28 U.S.C. § 1961(a). Therefore, Plaintiff shall be awarded post-judgment interest at the statutory rate provided in § 1961(a) for her compensatory damages of $464,538 and prejudgment interest from June 2, 2017, until the judgment is satisfied.

## I. CONCLUSION

IT IS, THEREFORE, ORDERED that:

1) Plaintiff's Motion for Treble Damages under the North Carolina Retaliatory Employment Discrimination Act (Doc. No. 94) is DENIED;

2) Plaintiff's Motion for Attorneys' Fees, Interest, and Costs (Doc. No. 99) is GRANTED; and

---

[2] See N.C. Gen. Stat. § 24-1 ("The legal rate of interest shall be eight percent (8%) per annum for such time as interest may accrue, and no more.").

3) Plaintiff's Supplemental Motion for Attorneys' Fees, Interest, and Costs (Doc. No. 109) is GRANTED.

IT IS SO ORDERED.

Signed: September 1, 2017

Frank D. Whitney
Chief United States District Judge